Oyez, oyez, oyez. The Honorable Appellate Court, 5th District, State of Illinois, is now in session. The Honorable Justice Welch presiding, along with Justice Cates and Justice Barberas. First case on the docket is 5-19-0306, Oettie v. Guthrie, et al. Arguing for the appellant, Trista Oettie, is Peter Magg. Arguing for the appellees, William Cadigan and the State of Illinois, is Frank Pizat. You will see the digital timekeeping device on the clerk's screen. Each side will have 20 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please remember only the clerk of the court is permitted to record these proceedings. Counsel for the appellant, ready to proceed? I am, Your Honor. Go ahead. May it please the court. My name, as was just referenced, is Peter Magg. I represent the plaintiff, Trista Oettel, in this case. What this appeal centers on, it's a First Amendment case dealing with the constitutionality of an Illinois election code provision. The citation is 10 ILCS 5-29-9. The crux of the statute, it sets forth a prohibition that, as applied to this case, prohibits voters from taking what, in common parlance, is called a ballot selfie, a photograph depicting themselves with a marked election ballot. The issue, as applied to this case, Ms. Oettel went to her assigned polling place on Election Day, November 2018, inquired of the election judge at her polling place whether she could take a so-called ballot selfie, a photograph of just herself with her completed ballot, and she was told that no, she could not, and that she would go to prison if she took the ballot selfie. The election code prohibiting ballot selfie photography, as well as the injunctive and declaratory relief, as applied to the Illinois State Board of Elections, which is enforcing the no photography ban in the polling facilities. Mr. Magg, when I started reading this case, it occurred to me that she didn't take the photograph. She wasn't charged. So, my question is, you've brought a case under a federal statute, I think, in 1983? I did, yes. So, are we going to apply Article III law? That is, do you have to have an injury before the case is ripe for adjudication? So, point one, yes, the case is brought under 42 U.S.C. Section 1983. As to whether or not the case is ripe or not, I think the case is ripe for the reason that photography, I believe I cited in my brief, there's a case that deals with whether photography is protected speech or not, and it is. But in that case, the person was charged, weren't they, with a misdemeanor? They were charged with a misdemeanor. I mean, there's been no... But here, I mean, I guess I'm struggling a little bit, and the Attorney General didn't raise this, but if you didn't take the photograph and you didn't get charged, where's the harm? I mean, I'm not clear how this is ripe, and maybe I'm thinking too deeply into it. Sure. So, I mean, no one that I am aware of thus far has indicated that they would not be... I mean, the inverse could be said. No one has said that they are not going to be charging Ms. Odall with a criminal offense of any sort. So, they haven't taken that off the table. What would there be to charge her with? She didn't violate any rules. So, what's on the table, I suppose, is the question. If she didn't violate rules, she couldn't be charged with anything. Is that correct? Well, I mean, it is correct. She did not take the actual photograph at the site. Now, I mean, as to whether or not the case is ripe, I think the issue about her damage is that she doesn't have her photograph that she was wanting to show and demonstrate her First Amendment right to people. So, it's the absence... I have one question. There was no physical restraint. She was just told no? That is my understanding. That is what is alleged in the complaint. No one that I am aware forcibly restrained her or anything of that nature. So, are you suggesting that the true injury is the restriction? Simply that she was restricted after asking for permission, she was restricted... Correct. Correct. ...and not been allowed to do as she wished? I mean, in effect, she was told that in her mind, I suppose, that I'm going to have someone that is taking criminal action on me and getting me in trouble if I persist on trying to have my ballot selfie, take my ballot selfie at the poll. So, if I understand correctly, her First Amendment right was prohibited or was interfered with by the threat of prosecution if she took the picture? That's precisely it. I mean, again, the damage is that she is unable... Just like you have a First Amendment right, there's the Alvarez case that's cited in my appellate brief dealing with photography of police officers, for example. You have a First Amendment right to photograph police officers in the course and scope of their duties. Prohibiting that would be prohibiting the First Amendment right to photograph. And the Seventh Circuit, in that case, has said that that is an injury if you're prohibited from doing so. So, I think that's why this case, why it is ripe and there is an injury before the court. Was the Alvarez case brought under 1983? That's my understanding, Your Honor. But the police officers were out in public or not? They were out in public, yes. Yeah. And I can't remember an Alvarez if there was a charge, but let me ask you a different question that kind of... Assuming the case is ripe, do you think... Are you making an as-applied, unconstitutional argument, or are you making an argument that it is, for all people, unconstitutional? Well, another part in answering the question, I would suppose it probably would have to be not just an as-applied, but just a facial challenge. And the reason I say that, there's discussion of the over-breath doctrine and how even if, as applied to Ms. Odell, even if one were to say in the polling place what they were doing would be constitutional, she can assert the rights of third parties that were, say, taking a ballot selfie on a public street by absentee ballot. That person, the person taking the photograph not in the polling area, it is my position that it's very clear that there are First Amendment protections that the statute and all of the non-public forum arguments would not apply with someone taking a photograph outside of the polling area. Now, with that said, if the statute were unconstitutional as to someone voting from their TV room or by their mailbox, I don't know how the court would parse that out in trying to uphold it for people that took photographs outside of the polling area as opposed to those that were in the polling area. Well, you know from the work you've done that we have very different burdens to consider as applied versus wholly unconstitutional. And if I'm at home and I vote by mail, I'm in the privacy of my own home, I've got a ballot, I take a picture, it's not a violation of the law, is it? Well, I think, by the text of the statute, I would say that even if you were taking the ballot selfie in your home or standing on the public street before you stick it in the mailbox to send off to the election authorities, by the statute, I would say it's probably illegal, an unlawful act of doing so. Now, whether or not the statute would pass muster to a challenge in that fact pattern, I think is the different question. And I think that you probably would have a lawful right, it's just the statute, at least on its face, is saying you can't do that. So you are making a facially unconstitutional claim. I mean, we have facially or as applied, right? Right, right. Correct. And I believe this is a facial challenge that is before the court. Let me ask you this, because this was a thought that got raised as a result of you citing that federal case. In the federal case, the penalty was a misdemeanor. Here we have a class four felony. Do you think there could be a disproportionate penalties clause violation here? I mean, I was surprised. Correct. I mean, it is one of the more severe penalties that I see. I think Illinois has one of the most severe that I saw on a cursory examination nationwide. I mean, which federal course was Her Honor referring to? The case that you cited, the one case, I don't have it in front of me, where they found that it was unconstitutional. There's the Rideout case, which is out of New York. The Rideout. It was the Rideout case. Yeah. Correct. Because I read both of the decisions, the lower court and the 7th Circuit, was 7th Circuit, right? Or no, 10th? I can't remember. It was like 1st or 2nd Circuit. Yeah. But there was the Rideout case. Correct. And in the Rideout case, which is one of the primary, although not the only cases that I'm relying upon, and Ms. Odal is relying upon in this case, I mean, it provides that whatever, every case in America that has addressed this issue that I am aware of, other than a Silberberg case out of New York, has held these prohibitions unconstitutional because the penalty, the infringement on the First Amendment rights, core political speech, whatever interest the state has, is de minimis as to the intrusion on the First Amendment rights at issue of the person. You say that, however, I think the AG's brief points out that, you know, one of the major concerns is voter fraud. And it gives the example of someone who is promised, you know, paid, for example, to vote one way and to ensure that the payment was received or that the act was actually done in receipt of payment. They take the photo so that whoever paid them to vote that way has proof that it was voted in that fashion. How can we find, is there something less restrictive, less onerous on First Amendment than prohibiting that type of behavior for that reason? Well, I think the Rideout, I mean, there's several cases that I cite out of Colorado, Indiana, New Hampshire, that deal with this. In answering your question, the New Hampshire cases, both the district court and the federal appeals court, said that, yes, there are alternatives that the state can do to prevent like vote buying and coercion. And they reference that states, including Illinois, have separate statutes expressly dealing with voter coercion, vote buying, those sorts of things. So if this court were to strike down the statute and the concern was we want to make sure that vote buying is still illegal and people aren't twisting arms and breaking kneecaps for someone to vote a certain way, there are separate statutes that deal with it. Furthermore, the district court on the Rideout decision, they used the phrase that there were, quote, isolated and anachronistic, close quote, reports of vote buying in Illinois. I mean, they even point blank reference to Illinois saying, listen, at best they're isolated, even in Illinois, when they were discussing it. The attorney general, well, I believe in the record that I have sent requests of the other side of the election judge, who's since not a party to this appeal, like how many cases of ballot photography issues and other like vote buying, I believe, was one of them. I asked how much of this is going on in Clinton County specific and the answer was none or nothing. As to what the attorney general has referenced in support of like voter photography issues, I mean, at best that they've referenced a handful of decisions. And I believe there's a people of the grudy or dignity or some case like that, that they've cited in that case didn't even deal with photography at all. So I just I don't believe there is very much in the record that supports that this is a widespread problem in Illinois. And I think there is authority I have cited that says just the opposite. I'm trying to think what else, but ultimately the relief that that is being sought boils down to we are asking that this court reverse the circuit court's dismissal, that the circuit court, when it dismissed this case, it actually dismissed the case. I believe it said on a two six one five basis was actually a two six one nine. I mean, the standards are still the same in this court, DeNovo. I thought they just I thought it was dismissed under six one five. The trial court order said under one basis, but it was actually under the other. Why do you say that the record is going to say that? If you looked at the motion to dismiss that was filed by the state of Illinois, what it was filed under and then I believe if you lay it alongside what the order said, the case was dismissed under different sections, motion to dismiss sections. I don't know that it particularly matters on that point because the review. No, it's more than a matter of review. It's how we view the pleadings. But I thought the pleading was a joint pleading. Maybe I'm maybe I'm wrong on that. But either way, we'll figure that part out. You don't you think it's a distinction without a difference? I think it's a distinction without a difference. If the score feels differently, that's fair enough. But I mean, ultimately, I think if you look at the like the Silberberg case, which is seemingly the one case that the state really has to hang its head on about, are these prohibitions constitutional or not? The see if I can pull it up here, but the Silberberg case, if I'm not mistaken. The the case citation that there's two Silberberg sites, one dealt with a preliminary injunction, one was after a bench trial. But the case site for 272 FSEP 3rd 454, if I'm not mistaken, that case, in the opinion, it even made reference something to the effect of that whoever an absentee or mail-in type voter wasn't even being considered, which I think is a flawed analysis because, again, the overbreadth doctrine, by applying that doctrine, allowing a third party that's not before the court now, they can seek to challenge on a First Amendment basis. So the Silberberg case, number one, I mean, they expressly didn't even address that fact pattern. Secondly, they tried to write out it based in part a Reed versus Town of Hastings case, a with challenging a municipal sign ordinance that applied, quote, anywhere in town. And Reed essentially said, even if the sign ordinance purports to be facially neutral, if you have to look at the text of the sign, is it a commercial sign? Is it a church sign? So if you have to look at the sign in any sort, then it's a content based description, which is the same issue in this case as well, that the state tries to portray this as a content neutral restriction because we're not saying we're only interested if you're voting for Trump as opposed to Biden or something like that. Per Reed, if you have to look at whatever the thing is in that case, a sign, in this case, a ballot, it becomes a content based restriction. And per Reed, I think the case law says that's when strict scrutiny would come into play. I mean, your time is up. I think that unless you have any special bad that I will, I'll end on that note. Thank you, counsel. Counselor DiAppoli. May it please the court. My name is Frank DiAppoli and I represent the state of Illinois and the chairman of the board of elections. Before getting into the merits of the argument, I just want to briefly address the mootness and ripeness issue up front that was raised during the opening argument. The case, I don't think there are mootness or ripeness problems in this case. One, as discussed earlier, Odell was prevented from taking the ballot selfie. So I think that would establish an injury issue. But also, Odell is seeking injunctive relief. So as long as she intends to take a ballot selfie in the future, I think that's normally sufficient to satisfy the exception to mootness or ripeness for cases that are capable of a repetition yet exceeding review. So I think that this appeal is ripe for decision. But turning to the statute, this court should affirm the constitutionality of section twenty nine nine of the election code because it is a reasonable viewpoint neutral regulation of a non-public forum. Beginning with the statutory text, section twenty nine nine just regulates what a voter may do with a government issued ballot during the act of voting. Specifically, it prohibits a voter from marking the ballot in such a way that somebody else can observe the contents of the completed ballot. The statute does not target social media or any other type of communication. The law, in fact, was enacted in nineteen seventy three long before these types of technologies had come into being. The law, therefore, has always regulated the ballot. Council, could you stop at this point? We might have lost one of the members of the court is Judge Barbera still on? Could we have lost him? There he is. I think we should wait until we get him back. OK. Stop the clock if we could. Can we stop the timer? Can you stop the. Hold on one second. We're back. OK, it looks like I don't know what happened there. OK. Did everyone disappeared? Was it just you? We're OK now. Let's go. OK. I'll just sort of start over with the statutory text. I'm not sure when Justice Barbera is cut out. But just to recap, beginning with the statutory text, section twenty nine nine regulates what a voter may do with the ballot during the act of voting. Specifically, it prohibits a voter from marking a ballot in such a way that the contents of the completed ballot can be observed by someone else. The law does not target social media or any other form of communication. The statute, in fact, was enacted in 1973, long before these types of technologies had come into being. And the law, therefore, has always regulated the ballots by preventing voters from displaying the contents of a marked ballot to someone else. Section twenty nine nine protects the integrity of the secret ballot, and it does so in concert with other provisions in the election code that have the same purpose as mandated by the Illinois Constitution and consistent with historical practice. So let me ask a question. Are you saying that if I take a picture of my ballot at home, it's OK? No, Your Honor. If the law applies, regardless of where the ballot is completed, because the relevant forum, the relevant government property for purposes of forum analysis is the ballot itself. And that's a nonpublic forum, regardless of where someone happens to be standing or located when they fill out the ballot. So when you so when you use the word nonpublic forum, you're referring to the ballot. You're not referring to the location of where I'm filling it out. Correct, Your Honor. I think that's the best analysis. Now, it is true that the polling place itself is also a nonpublic forum. And so to the extent that Section twenty nine nine regulates the polling place, you would end up with the same constitutional test. And there are some aspects of twenty nine nine that do affect the polling place. For example, it ensures an orderly election process because if people are taking ballot selfies, that could slow down the process of voting, which could be particularly problematic during peak voting hours. But the but primarily what twenty nine nine does is it regulates what a voter can do with the ballot. And because the ballot is a government or government owned property, the any first analysis, First Amendment analysis must begin with an inquiry into whether it's a public or a nonpublic forum. And that is because the constitutional, the governing constitutional test differs depending on the outcome of that question. If it's a public forum, then content based restrictions receive strict scrutiny. But it's going to say you have the strict scrutiny burden, correct? No, Your Honor, because if we analyze it with strict scrutiny, it has to meet that test. No, Your Honor. It would only have to meet that test, Your Honor, if the ballot were a public forum in a nonpublic forum. Even content based restrictions are reviewed for reasonableness and viewpoint neutrality. And one place that this court can look for an explanation and application of that standard is Mansky, which is the most recent Supreme Court case on the issue. There, the court reviewed a content based restriction of core political speech in a polling place. So in that case, it was a nonpublic forum. And but it did so under a reasonableness and viewpoint neutrality standard. And so what about Mr. Maggs' argument towards the end of this time about, you know, the sign, if you had to read the sign, then it's content based. And if you have to look at the ballot and read the ballot, it's content based. Right. Well, I want to differentiate between the concepts of content based and content neutrality and viewpoint based and viewpoint neutrality, because they're two different concepts. Something is content based based on its subject matter. And so at least for purposes of this appeal, we're not arguing that Section 29.9 is not content based. You know, you're arguing it's not content based? No, we're agreeing, at least for purposes of this appeal, that it is content based. OK. But it's viewpoint neutral. It's it's arguably content based in that the law only applies based on the contents of the ballot. It only applies to a completed ballot. So for that reason, I think under read, it would probably be content based. But viewpoint neutral is a different concept. Even if something is content based, a law satisfies First Amendment analysis in a nonpublic forum if it's viewpoint neutral and reasonable. And here the law is viewpoint neutral because it doesn't discriminate based on the voters viewpoint. It applies to all voters equally, regardless of who they're voting for or what their viewpoint is. So it's a very important distinction between the two, because when you're in the nonpublic forum analysis, whether it's content based or content neutral is really immaterial because, as the Supreme Court explained in Manske and other cases before that, even content based restrictions are reviewed for reasonableness and viewpoint neutrality. And sort of the core concept behind the whole nonpublic forum analysis is that the government maintains the freedom and authority to ensure that nonpublic forums are used for their intended purpose. And so and that is really at the core of also the reasonableness analysis and determining whether or not the law is reasonable. As long as it's reasonable and doesn't discriminate on the basis of viewpoint, it satisfies the First Amendment analysis. And with regards to the ballot, the Supreme Court has stated on more than one occasion that the ballot itself is a nonpublic forum. It explained that the ballot serves a very limited purpose, which is to cast a vote in an election for a candidate for public office. It is not a means by which people can express political messages to the public at large. And so consistent with the court's numerous ballot access cases, the state can restrict the use of the ballot so long as it is reasonable and non-discriminatory, as long as it does not discriminate on the basis of viewpoint. The court most directly said that in Timmons, but that was building upon the ballot access cases in Burdick. Chief Justice Roberts made that point again in his concurrence in Washington State Grange, where he said the court has never considered ballots to be a public forum. And so here we're in a nonpublic forum analysis. As explained, the law is viewpoint neutral because it applies to everybody equally. And the law is reasonable because it ensures that the contents of the completed ballot remains secret, which is necessary in order to conduct elections by secret ballot. The entire the basis of the adoption of the secret ballot system was to ensure that other people cannot visually confirm that somebody has voted in a particular way, because that is especially helpful in schemes of vote buying or intimidation, as Justice Barbaros pointed out. Sort of the basic fact pattern is that if somebody pays somebody to vote in a certain way, they want to make sure that that person actually voted in that way. And so the best way to ensure that that happened is to require somebody to provide visual evidence of the completed ballot, proving that they voted that way. It would also apply in intimidation or coercion. You know, somebody could say, you know, if somebody's boss could tell their employees, I want you all to vote for this person. And if you don't, you know, I'm going to make your life hell or something. They could they could essentially say, if you can't prove that you voted the way I want you to vote, you lose your job. Right. The intimidation there. There's plenty of ways that information could be used for voter fraud and intimidation. And that, in fact, is is one of the reasons why the law is reasonable is that it's very targeted and specific and direct. It applies only to that conduct that is most detrimental or especially detrimental to the secret ballot. It just prevents a voter from disclosing the contents of their completed ballot. But that voter could very, you know, has every other option available to them to express their pride in having voted and express their preference for one candidate over another. They're free to really do anything else they want. They just can't use an image of the completed ballot because that would undermine the whole basis of the elections by secret ballot. What about what about Mr. Meg's comment that we have enough laws in the election code that would prohibit the kind of conduct you're talking about without stepping on someone's First Amendment rights? Right. But that's similar argument or pretty much the same argument was made in Burson, which was one of the Supreme Court cases we cited. And the court rejected that argument in that case, even under a strict scrutiny analysis in a voting case. Yes, Your Honor, that the Burson case involved a 100 foot campaign free zone outside of a polling place where it entirely prohibited any political speech within that area. And in Burson, the court stated intimidation interference laws fall short of serving the state's compelling interests because they deal with only the most blatant and specific attempts to impede elections. In doing so, citing Buckley, where the Supreme Court reached the same conclusion regarding campaign contribution limits, the court said that, you know, the fact that there are laws that criminalize fraud, that criminalize bribery, that require disclosure, that's not enough. The state has to have the freedom to address the means by which those schemes are executed. And that's true here as well. It's the state has the freedom to prevent the methods by which vote buying and voter coercion occur. The language in the case you rely on, which is Silberberg, which is a voting case, the statute is very different than in Illinois. It's very narrowly. It's an old statute. I think it was in the 1800s that it was enacted, but the court limits its discussion only to in the polling place, it seems like to me. Well, I think I could go back and check. I think there there there is an aspect of Silberberg where the court also says that the ballot is a non-public forum as well, in addition to the polling place. But I would also state, though, that our reliance, we're not relying entirely or even, I guess, principally on Silberberg. We're more looking at the Supreme Court precedents that preceded and governed Silberberg and Rideout and the other cases that came out the other way. And Rideout is inconsistent with a lot of those decisions. The primary flaw with Rideout's analysis is that it didn't conduct the initial forum analysis. It jumped straight into whether this was content based or content neutral, presumably, I guess, assuming that it was a public forum or I don't know why the court didn't conduct a forum analysis, but it went straight into that analysis. But even when applying intermediate and strict scrutiny, Rideout committed a number of other errors. It required specific examples from New Hampshire of that specific type of particularized showings in Burson and Monroe. And Burson was a strict scrutiny case. Again, here we're at a much lower level of scrutiny where the statute need only be reasonable. And I mean, I think the statute is very reasonable. But as the court stated in Cornelius, it does not need to be the only reasonable or even the most reasonable manner of protecting the secret ballot. And do you think that a class four felony is a reasonable to enforce this kind of conduct considering the changes in technology? Well, I think so, Your Honor, but even if it isn't plaintiffs, I don't understand Odal's argument to be that the sanction is too harsh. I think I believe the argument more to be that outlawing this conduct at all violates the First Amendment. And so if there is a separate disproportionate issue, I think that's something that would need to be decided in that particular case. But that's not something that was, I don't think, a part of this case below or on appeal. But in order to support the lower court's finding and the I just looked at the order, it is a it is a bit confusing. But in order to support it, don't we have to find that the statute was viewpoint neutral and reasonable? Yes, Your Honor. So when we look at the statute, we're looking at all of the statute, not just that little portion. We're also looking at the penalty involved. Or do you disagree with that? Well, I mean, you do look at the statute as a whole, but I guess I would two points is that one, I think a class four felony, you know, any sanction that for for engaging in certain conduct, if it's protected by the First Amendment, it would, you know, it would violate it would violate the First Amendment regardless of the severity. But also, I think that that's an issue that would be better discussed or decided in a case where that had been fully briefed and presented. I think here the primary argument is that really any regulation of or any prohibition on ballot selfies necessarily violates the First Amendment. And I don't think that's correct. And also, but just going back to ride out real quick, one other flaw with the decision is in the way that it deals with person. It's in right out, the court decided that the ban on ballot selfies was more restrictive than than the law in person. And not only that, but that it served a less important purpose because it distinguished between person found that the state had a compelling interest in conducting free and fair elections through the secret ballot, but also that the 100 feet, 100 foot campaign free zone was narrowly tailored to that interest because it secured the area around which a voter votes. And by doing so, it protected the secret ballot here. The law serves the exact same purpose, except it does so in an even more targeted way. If the state has a compelling, you know, if a law that secures the area around a voter satisfies strict scrutiny, then one that prevents a voter from displaying the contents of a completed ballot must as well, because that was the whole purpose of securing the area around the voter. It's so to maintain the secrecy of the contents of the ballot. And so unless your honors have any further questions, I would just like to conclude by saying Section 29.9 is a reasonable viewpoint, neutral regulation of a non-public forum. And we would ask that you affirm the circuit court in this case. Thank you, counsel. Rebuttal. Thank you, your honor. So I'd like to respond to one of the points that the attorney general was raising. There's two public forums or non-public forum distinctions that have been discussed. One is as to the polling area itself. The other that was just discussed dealt with is the ballot itself a non-public forum or a non-public forum. I think a hypothetical as applied to the statute would demonstrate how even if the court were to construe the ballot itself as a non-public forum, that the state's argument still fails. And that hypothetical is if you had someone, again, voting from home or voting on a law that cited in the brief would say a public street is a public forum protected to speech. If you had a person voting there and they were wearing, I mean, whether they were a Joe Biden supporter or a Donald Trump supporter, and they had their t-shirt on saying, I support Joe, I support Donald, and they're holding their ballot in their hand that's completed and they take a ballot selfie doing so. By the text of the statute that says, quote, state law prohibits voters from taking photographs with their completed ballot, period, close quote. Whether or not the ballot itself is considered in part of the speech, the fact that someone's wearing, in that fact pattern, a t-shirt saying I support some candidate, I mean, it's core political speech on there that they're wearing, that they're saying I support whoever, but the bare fact that they're holding a ballot in their hand, in addition to wearing the t-shirt, suddenly that's a class 4 felony to both be wearing a t-shirt and holding the ballot. So under that fact pattern, again, I think that whether this court views the ballot itself as a public forum or not, I think it is irrelevant because just other things in the photograph that could be core political speech are being prohibited, whether or not the ballot itself is a non-public forum. Now, are you suggesting that there's no Illinois cases on point with regard to the ballot being considered the non-public forum? It's the ballot itself being the reason, being non-public? So most of the cases I see that are out there, I think Timmerman was one of them that deal with, is the ballot a non-public forum or not? They seem to be in the context of the state preparing the ballot of who is supposed to be, who meet the requirements to be on the ballot that the state will print. I don't, I could not locate a decision one way or the other dealing with when someone takes that additional step of, okay, the state has their pre-printed ballot that everyone gets and then they start to mark onto the ballot. Does that become a public forum or not, or is that protected speech? Well, the agency obviously has given a long list of cases that hold that the ballot itself is the non-public forum and pages 19 through 20 of its brief, including Forbes and Cornelius, Perry, Education Association, Lehman. Your argument against those is? Well, I could start with, as the reply brief stated, it's on page three, when the content of the speaker's message forms the basis for its elective regulation, public forum analysis is no longer crucial. Secondly, as the hypothetical I gave provided at the beginning, even if you were to say, if the court were to say, okay, the ballot itself is a non-public forum and let's assume that just for hypothetical sake, that it's entitled to a lower level of protection. The fact, I mean, if you're wearing something else, a button, a t-shirt, something else that says you support whoever, and you're holding the ballot, if you're wearing something else in addition to the ballot, you are now committing a class four felony when you take a picture of yourself. If you didn't have the ballot in your hand and you took a photograph of yourself wearing your Biden or your Trump t-shirt, it's not a class four felony. Are you saying that merely by holding the ballot, wearing the t-shirt, you're committing the crime? I mean, something has to be filled out on the ballot, right? Well, it has to be a marked ballot. I mean, you're correct, Your Honor, but my point is, if you had one person standing there with their political shirt without a marked ballot in their hand, it would be okay if they're on the public street. But if they're holding the ballot while wearing their t-shirt, it becomes a class four political speech and reaches far beyond what it needs to reach to accomplish that goal. Counselor, aren't you assuming then, you're saying it's a marked ballot, aren't you assuming you're actually showing the results on the ballot? You're not showing a folded ballot. Well, I mean, presumably, or at least it marked in some regard, so that. Well, it could be marked and you couldn't tell how it was marked if it was clothed or folded or whatever. Therefore, that would not even be a charge. As long, per the statute, as long as it says prohibits voters from taking photographs with their completed ballot. And so I suppose at that level, if you had a completed ballot and you folded it in two, so you didn't even see how anyone, who you voted for, I guess it would still be a completed ballot. So then you're saying all these, every time they have someone vote on the national election, someone that's well known, it always shows the candidate putting the ballot into the box. That means that's a violation. Is that what you're trying to say? Well, I think in Silberberg, that's exactly what one of the plaintiff's lawyers was arguing. I think, I think what they, in Silberberg, the New York case, I think there was reference in one of the two decisions about making note of Donald Trump and his wife putting their ballots in, just like many politicians do in front of cameras come election time. Okay. Your time is up. The court will take the case under advisement in a quarterly issue in due course. Thank you for your participation. Your excuse. Thank you, Your Honors. Thank you, Your Honor.